IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEI LIANG, on behalf of plaintiff and the class members described herein, | ) ) ) ) |
| Plaintiff, | ) 15 C 09054 ) |
| v. | ) Judge John Z. Lee ) |
| FRONTLINE ASSET STRATEGIES, LLC, LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, L.P., and ALEGIS GROUP, LLC, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wei Liang filed suit against Frontline Asset Strategies, LLC ("FAS"), LVNV Funding, LLC ("LVNV"), Resurgent Capital Services, L.P. ("Resurgent"), and Alegis Group, LLC ("Alegis") asserting violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e. Defendants have filed a motion to dismiss Plaintiff's Third Amended Complaint and strike certain allegations therein. For the reasons stated below, the motion [53] is granted in part and denied in part.

**Factual and Procedural Background**

This case arises from efforts by FAS to collect a debt from Plaintiff. 3d Am. Compl. ¶¶ 40, 42, ECF No. 51. The debt in question originated from a credit card account on which Plaintiff allegedly defaulted. *Id.* ¶¶ 26–27. In 2005, an entity not before this court, North Star Capital Acquisition, LLC ("North Star"), obtained a

default judgment against Plaintiff with regard to the debt. *Id.* ¶ 26. Defendants contend that, by a series of transfers, LVNV then became the owner of the debt, and employed FAS to recover it. *Id.* ¶¶ 38, 40, 42.[1] The focus of Plaintiff's action is a letter in which he claims that FAS made various false or misleading representations while attempting to collect the debt. *Id.* ¶ 42; *see id.* ¶ 50.

Plaintiff originally filed suit on October 13, 2015, after which he amended his complaint twice in lieu of responding to Defendants' motions to dismiss. In his second amended complaint, he raised two primary grounds on which he alleged the letter was false or misleading: first, that "it did not disclose that the judgment in question was a dormant judgment under Illinois law"; and second, that the letter suggested defendants were the judgment creditors, despite the fact that they are not. *Liang v. Frontline Asset Strategies, LLC*, No. 15 C 09054, 2016 WL 7409913, at *1 (N.D. Ill. Dec. 22, 2016).

The Court dismissed each of these claims with prejudice. *Id.* at *4. In regard to Plaintiff's first claim, the Court concluded that "even if the letter had disclosed the dormant status of the judgment, it would not have had any practical impact on an unsophisticated consumer's rights or decision-making process in relation to the debt," and thus was not a material statement that could give rise to FDCPA liability. *Id.* at *2–4. Then, in regard to Plaintiff's second claim, the Court found that "the letter notes that LVNV is the creditor to whom the debt is owed; it makes

---

[1] Liang further alleges that "[a]ll actions taken in the name of LVNV are in fact taken by Resurgent," *id.* ¶ 21, and that Alegis is Resurgent's "sole general partner," *id.* ¶ 19, which are the bases for their inclusion in this action.

2

no statement that would mislead a debtor into thinking that LVNV was also the judgment creditor." *Id.* at *4. Finally, the Court observed that, in his briefing, Liang "also appear[ed] to challenge LVNV's ownership of the debt," but that his second amended complaint did not clearly raise a claim based on lack of ownership. *Id.* It therefore granted Plaintiff leave to amend insofar as "he ha[d] a nonfrivolous argument that LVNV is not the owner of the debt at issue." *Id.*

In Plaintiff's Third Amended Complaint, he clarifies his allegation that LVNV did not own the debt on which it sought to collect only to represent otherwise in FAS's letter. 3d Am. Compl. ¶ 1, 50. Specifically, he states that a bill of sale seeking to assign certain "Accounts" from North Star to another entity, which in turn assigned the accounts to LVNV, was insufficient to transfer ownership of Plaintiff's debt. *Id.* ¶¶ 38–39; *see id.*, Ex. M. This bill of sale states as follows: "[North Star] hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, all right title and interest of any kind in and to the Accounts set forth in the data file named 'Zenith-NorthStar-2011-12,' as shown in the Accounts Schedule, which is hereby incorporated by reference." *Id.*, Ex. M. Plaintiff maintains that, because his defaulted account had been reduced to a judgment, it was no longer an "account," and thus could not have been transferred by the bill of sale, negating LVNV's claim to ownership. *Id.* ¶ 39.

In addition to this claim, Plaintiff continues to assert that Defendants violated the FDCPA by "[a]ttempting to collect a dormant judgment, on which defendants were not the judgment creditor." *Id.* ¶ 50.

3

## Analysis

I.  **Motion to Strike**

Defendants first move to strike various allegations from Plaintiff's Third Amended Complaint. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "But where, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Id.* A district court "has considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter." *Delta Consulting Grp., Inc. v. R. Randle Const.*, Inc., 554 F.3d 1133, 1141 (7th Cir. 2009).

The allegations that Defendants seek to strike all relate to the two bases for Plaintiff's claims that the Court dismissed with prejudice in its previous order (*i.e.*, Plaintiff's theories related to the relevant judgment's dormancy and LVNV's non-status as a judgment creditor). Def.'s Mot. Dismiss 4–6, ECF No. 53. District courts have regularly stricken allegations seeking to revive claims that have been previously dismissed with prejudice. *E.g.*, *Brunson v. Schauf*, No. CIV. 12-225-GPM, 2013 WL 66158, at *1–2 (S.D. Ill. Jan. 4, 2013); *David v. Vill. of Oak Lawn*, No. 95 C 7368, 1996 WL 494268, at *2 (N.D. Ill. Aug. 27, 1996); *Gardean Envtl. Co. v. Local 225, Laborers Int'l Union, AFL-CIO*, No. 92 C 4545, 1993 WL 462833, at *3

(N.D. Ill. Nov. 9, 1993); *Wallace v. Xerox Corp.*, No. 87 C 8810, 1989 WL 51119, at *2–3 (N.D. Ill. May 8, 1989).

Seeking to avoid this result, Plaintiff first contends that the Court's previous order "did not say that anything was to be deleted." Pl.'s Resp. 10, ECF No. 58 (emphasis omitted). But this argument misses the mark. The Court unequivocally dismissed Plaintiff's claims based on these allegations with prejudice, thereby precluding Plaintiff from raising them again, as he has here.

Plaintiff further states that "[t]he fact that the Court held that facts A and B were insufficient absent fact C does not make facts A and B irrelevant after C is added." Resp. at 10. This argument misconstrues the Court's opinion. The Court did not hold that "facts A and B"—*i.e.*, the issues Plaintiff raised as to the relevant judgment's dormancy and LVNV's non-status as a judgment creditor—were "insufficient absent fact C"—*i.e.*, Plaintiff's allegation of lack of ownership. The Court ruled that the former theories failed to state a claim under the FDCPA, regardless of whether Plaintiff further disputed LVNV's ownership of the debt. *Liang*, 2016 WL 7409913, at *4. Nowhere did the Court invite Plaintiff to replead allegations it dismissed with prejudice because they might become relevant to the isolated claim that the Court permitted Plaintiff to raise. *Id.*

Moreover, Plaintiff's attempt to shoehorn these claims into his lack of ownership theory is unpersuasive. As explained above, Plaintiff's theory that LVNV lacked ownership over his debt is that the bill of sale in which LVNV was purportedly assigned the debt only transferred "Accounts," and a judgment is not an

5

"Account." Thus, according to Plaintiff, the letter he received misleadingly indicated that LVNV owned the debt. This theory is distinct from his allegations concerning the judgment's dormancy and LVNV's non-status as a judgment creditor. Plaintiff maintains that "ownership of the judgment can be placed in issue in a revival proceeding," Resp. at 10, but this ignores the Court's previous discussion explaining why the issue of dormancy and corresponding revival proceedings is immaterial. A misrepresentation about dormancy does not become material simply because, according to Plaintiff, in addition to the debt being dormant, LVNV did not own the debt.[2] Similarly, Plaintiff fails to persuade the Court that his claim that LVNV did not own the debt somehow calls into doubt the Court's finding that the letter at issue does not indicate that LVNV was a judgment creditor.

For these reasons, the Court strikes paragraphs 29, 31–34, 36–37, 45–50, 53–56, and 59 from Plaintiff's Third Amended Complaint to the extent that these paragraphs are premised on Plaintiff's theories related to the relevant judgment's dormancy and LVNV's non-status as a judgment creditor.

## II. Motion to Dismiss

Next, Defendants move to dismiss Plaintiff's remaining allegation that LVNV did not own the debt at issue. A motion under Rule 12(b)(6) challenges the

---

[2] Insofar as revival proceedings might permit Plaintiff to challenge LVNV's ownership of the debt, 3d Am. Compl. ¶¶ 32–34, this no more than restates the fact that LVNV's ownership is the only alleged misrepresentation in NAS's letter that could be material.

6

sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under federal notice pleading standards, "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted); *see also* Fed R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inference in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Additionally, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged in the complaint. *Id.* Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, the plausibility standard is not akin to a probability requirement but, rather, asks for more than a sheer possibility that a defendant acted unlawfully. *Id.*

In seeking to dismiss Plaintiff's claim based on lack of ownership, Defendants argue that the bill of sale by which North Star sought to transfer ownership of Plaintiff's debt was successful in doing so, such that LVNV ultimately came to own it. Defendants raise two arguments: first, that the bill of sale's language

7

transferring ownership of "Accounts" was sufficient to transfer ownership of Plaintiff's debt, even if that debt had been reduced to judgment; and second, that "regardless of whether accounts include judgments," the bill of sale incorporated by reference an "Accounts Schedule" that included Plaintiff's debt. Mot. Dismiss at 11–13.

Defendants' arguments ask the Court to interpret what "Accounts" means in the bill of sale.[3] Contract interpretation "involves conclusions of law" in some instances capable of resolution on a motion to dismiss. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998); *Belsky v. Field Imports, Inc.*, No. 13 C 1758, 2013 WL 5819232, at *11 n.14 (N.D. Ill. Oct. 29, 2013) (collecting cases). In interpreting a contract, Illinois law first requires that the court determine if it is unambiguously capable of only one interpretation. *Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011)). The court must seek to effectuate the intent of the parties by looking to the plain and ordinary meaning of the language of the contract, while construing the contract as a whole and considering words in light of their context. *Minn. Life Ins. Co. v. Kagan*, 724 F.3d 843, 849 (7th Cir. 2013) (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). If the contract affords one, unambiguous meaning, the court must apply that meaning. *Harmon*, 712 F.3d at 1050. But if the contract's

---

[3] The Court can consider the bill of sale in ruling on Defendants' motion to dismiss because it was attached to Plaintiff's Third Amended Complaint. *See* 3d Am. Compl, Ex. M.; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (holding that documents attached to a complaint can be considered on a motion to dismiss without converting the motion to one for summary judgment).

8

meaning is ambiguous, its meaning must be left to the trier of fact and cannot be resolved on a motion to dismiss. *Id.*; *Horton v. Chicago*, No. 13-CV-6865, 2016 WL 4945014, at *6 (N.D. Ill. Sept. 15, 2016).

Recall that here, the bill of sale at issue stated as follows: "[North Star] hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, all right title and interest of any kind in and to the Accounts set forth in the data file named 'Zenith-NorthStar-2011-12,' as shown in the Accounts Schedule, which is hereby incorporated by reference." 3d Am. Compl., Ex. M. According to Plaintiff, however, the bill of sale is only a "portion[]" of the "purported assignment document." *Id.* ¶ 39. That Defendants have submitted additional materials they claim were part of the assignment document only confirms that the Court does not have the entire agreement before it. As such, the Court is unable to determine at the pleading stage whether the term "Accounts" is unambiguous or what it might mean. Assuming Plaintiff's allegations to be true and construing all reasonable inferences in his favor, Defendants' motion to dismiss must be denied.

Furthermore, even assuming, for the purposes of argument, that the one-page document Plaintiff attached as Exhibit M to the Third Amended Complaint constitutes the entire body of the agreement, the actual "Accounts Schedule" upon which Defendants rely to dismiss Plaintiff's claim is not properly before the Court. Defendants have appended to their motion to dismiss an attachment that they represent as this schedule and as containing Plaintiff's debt. *See* Mot. Dismiss, Ex. B. But Plaintiff contests the authenticity of Defendants' attachment and offers a

9

number of grounds for doing so. Pl.'s Resp. at 4–5. Thus, the Court cannot consider Defendants' attachment without converting their motion to dismiss to a motion for summary judgment and affording Plaintiff notice of its intention to do so and an opportunity to respond. Fed. R. Civ. P. 12(d); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639–40 (7th Cir. 2008).

For this reason, Defendants' motion to dismiss Plaintiff's claim based on LVNV's lack of ownership must be denied at this stage with leave to refile as a motion for summary judgment. The Court will afford the parties limited discovery as to the relevant assignment documents and the Accounts listed in the Account Schedule included in Zenith-NorthStar-2011-12.[4] Upon conclusion of this discovery, Plaintiff can renew its motion as a motion for summary judgment on this ground.

## **Conclusion**

For the reasons stated herein, the Court grants in part and denies in part Defendants' motion to dismiss Plaintiff's Third Amended Complaint and strike allegations therein [53]. Paragraphs 29, 31–34, 36–37, 45–50, 53–56, and 59 are stricken insofar as they address the claims the Court previously dismissed with prejudice. A status hearing is set for Thursday, April 27, 2017, at 9:00 a.m. The

---

[4] Defendants acknowledge in their reply that the attachment to their motion to dismiss is not in fact the Accounts Schedule of the data file at issue, but an altered version of such. Def.'s Reply at 8, ECF No. 59. Defendants state that the data file "is a large file with numerous accounts unrelated to this matter, the production of which would be impracticable and include private information of non-litigations [sic]." *Id.* If this is so, Defendants can seek an appropriate protective order from the Court before producing the document in discovery.

parties should be prepared to discuss a discovery schedule limited to the relevant assignment documents and the Accounts listed in the Account Schedule included in Zenith-NorthStar-2011-12.

**IT IS SO ORDERED.**     ENTERED    4/14/17

_____

**John Z. Lee**
**United States District Judge**